UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TARA NIKOLAO,

      Plaintiff,

v.                                                          Civil Case No. 16-12545
                                                            Honorable Linda V. Parker

NICK LYON, WAYNE COUNTY
DEPARTMENT OF HEALTH, VETERANS,
AND COMMUNITY WELLNESS,
MOUHANAD HAMMAMI,
CAROL AUSTERBERRY,
JANE DOE 1, and JANE DOE 2,

      Defendants.
_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTIONS TO DISMISS**

This lawsuit arises from Plaintiff Tara Nikolao's interaction with employees

at the Wayne County Health Department while procuring the forms necessary to

exempt her children from the State of Michigan's vaccination requirement to

attend public school. In a Complaint filed July 7, 2016, Plaintiff alleges the

following claims against Defendants: (1) violation of the Free Exercise Clause of

the First Amendment; (2) violation of the Establishment Clause of the First

Amendment; (3) violation of Article 1, Section 4 of the Michigan Constitution; and

(4) violation of Michigan Compiled Laws Section 333.9215. Defendants are: Nick

Lyon ("Director Lyon"), sued in his individual capacity and in his official capacity

as Director of the Michigan Department of Health and Human Services

("MDHHS"); the Wayne County Department of Health, Veterans, and Community

Wellness ("DHVCW"); Dr. Mouhanad Hammami ("Dr. Hammami"), sued

individually and in his official capacity as Director of DHVCW; Carol Austerberry

("Ms. Austerberry), sued individually and in her official capacity as Division

Director and Deputy Health Officer of DHVCW; and Jane Does 1 and 2, sued

individually and in their official capacities as nurse and nurse manager,

respectively, for DHVCW.

Presently before the Court is Director Lyon's motion to dismiss pursuant to

Federal Rules of Civil Procedure 12(b)(1) and (6), filed August 24, 2016. (ECF

No. 11.) Also before the Court is a motion to dismiss pursuant to Rule 12(b)(6) or,

in the alternative, Rule 56, filed by DHVCW, Dr. Hammami, and Ms. Austerberry

(collectively "Wayne County Defendants"). (ECF No. 10.) Plaintiff filed a brief

responding to both motions on September 14, 2016. (ECF No. 12.) Director Lyon

and the Wayne County Defendants filed reply briefs on September 28, 2016. (ECF

Nos. 13, 14.) Finding the facts and legal arguments sufficiently presented in the

parties' briefs, the Court is dispensing with oral argument pursuant to Eastern

District of Michigan Local Rule 7.1(f).

## I.     Applicable Standards

A motion to dismiss pursuant to Rule 12(b)(1) challenges the Court's subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  Where subject matter jurisdiction is challenged under this rule, the plaintiff bears the burden of proving jurisdiction. *Moir v. Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks. Fed. R. Civ. P. 12(b)(1); *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).

A facial attack challenges the sufficiency of the pleading itself.  In that instance, the court accepts the material allegations in the complaint as true and construes them in the light most favorable to the nonmoving party. *Ritchie*, 15 F.3d at 598 (citing *Scheuer v. Rhodes*, 416 U.S. 232, 235-37 (1974)). In contrast, a factual attack is "not a challenge to the sufficiency of the pleading's allegation, but a challenge to the factual existence of subject matter jurisdiction." *Id*.  Where the motion presents a factual attack, the court does not afford a presumption of truthfulness to the allegations but weighs the evidence to determine whether subject matter jurisdiction exists. On a factual attack, the court has broad discretion to consider extrinsic evidence, including affidavits and documents, and can conduct a limited evidentiary hearing if necessary. *See DLX, Inc. v. Kentucky*, 381

3

F.3d 511, 516 (6th Cir. 2004); *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir.1990).

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . .." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

As the Supreme Court provided in *Iqbal* and *Twombly*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading

4

stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This presumption, however, is not applicable to legal conclusions. *Iqbal*, 556 U.S. at 668. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555).

Summary judgment pursuant to Rule 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986). After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## II.    Factual Background

Michigan law requires children to receive certain vaccinations in order to attend public school, with two exceptions:

> (1) A child is exempt from the requirement of this part as to a specific immunization for any period of time as to which a physician certifies that a specific immunization is or may be detrimental to the child's health or is not appropriate.

> (2) A child is exempt from this part if a parent, guardian, or person in loco parentis of the child presents a written statement to the administrator of the child's school … to the effect that the requirements of this part cannot be met because of religious convictions or other objection to immunization.

Mich. Comp. Laws § 333.9215.  In December 2014, a new administrative rule was implemented in Michigan requiring individuals seeking a nonmedical exemption from the vaccination requirement to obtain certification from "the local health department that the individual received education on the risks of not receiving the vaccines being waived and the benefits of vaccination to the individual and the community."  Mich. Admin. Code R. 325.176(12).  The rule states that "[a]ll waivers shall be submitted using the waiver form prescribed by the department."  *Id*.  MDHHS provides local health department employees with materials outlining *inter alia* responses to concerns about vaccinations and asserted religious reasons for rejecting immunizations.  (Compl. ¶ 26, Ex. B.)  Plaintiff alleges that the

6

materials "contain[s] many misrepresentations and falsehoods about Catholic beliefs and teachings relating to vaccines." (*Id.* ¶ 27.)

Plaintiff is a devout Roman Catholic and the mother of four children. (*Id.* ¶¶ 12, 13.) Plaintiff opposes all vaccines based on her religious beliefs "that the body is God's temple and injecting it with chemicals that permanently alter the body violates the will of God." (*Id.* ¶ 14.) Prior to October 2015, Plaintiff received religious exemptions from the State vaccination requirement approximately ten times by submitting her objection in writing and providing it to her children's school. (*Id.* ¶ 38.)

On October 5, 2015, in accordance with administrative rule 325.176(12), Plaintiff went to the Wayne County Health Department ("WCHD") to obtain the certification now needed for her children's exemption forms. (*Id.* 39.) Plaintiff alleges that to obtain the forms, she had to leave work early, pack up her four children, and drive approximately two hours to travel roundtrip between her home and the WCHD. When she arrived at the WCHD, Plaintiff met with Defendant Jane Doe 1, a WCHD nurse. (*Id.* ¶¶ 21, 42.)

According to Plaintiff, after she stated she had a religious objection to vaccines, the nurse "asked [Plaintiff] what her *actual* reason was for objecting." (*Id.* ¶ 42, emphasis in original.) When Plaintiff repeated that she had a religious objection to vaccines, Jane Doe 1 stated that Plaintiff needed to be more specific.

7

(*Id*. ¶43.)  Plaintiff refused because she did not want to share her personal beliefs; however, Jane Doe 1 insisted on specifics stating that the " 'State's got documentation that a lot of the religions are now going for the vaccines.' "  (*Id*. 45.)  Plaintiff claims Jane Doe 1 "pressed harder, repeatedly asking what [Plaintiff's] religious belief was and if it had to do with the ingredients in vaccines or injections."  (*Id*. ¶ 47.)

When Plaintiff continued to offer nothing more than that she is requesting an exemption based on her religious beliefs, Jane Doe 1 left to get Defendant Jane Doe 2, the nurse manager.  (*Id*. ¶ 22, 49.)  According to Plaintiff, she then told the nurses that State law only required a person to assert a religious objection.  (*Id*. ¶ 50.)  Plaintiff claims that Jane 2 issued in response "an ultimatum: if [Plaintiff] wanted the statutorily mandated religious waiver, she needed to declare what religion she practices, explain her religious beliefs, and engage in a back and forth discussion with the Wayne County nurse concerning her religious objection because, according to Defendant Jane Doe 2, there are no religions that have objections to vaccines." (*Id*. ¶ 51.)

Jane Doe 2 next showed Plaintiff MDHHS educational materials, which Plaintiff claims "contain[] misrepresentations and lies about Catholic beliefs and teachings."  (*Id*. ¶ 52.)  Plaintiff specifically points to this statement in the materials:

8

> In 2005, Pope Benedict XVI addressed [vaccines made
> from aborted fetal cells].  It was determined that parents
> who chose not to give vaccines derived from these cells
> would be in "more proximate cooperation with evil" than
> those who gave their children the vaccines in question
> because of the life saving nature of vaccines.

(*Id*. ¶ 28, quoting Ex. B at 4.)  Plaintiff asserts that Pope Benedict XVI never

uttered the above-quoted phrase or any similar statement regarding vaccines.  (*Id*.

¶ 29.)  Instead, the statement was made to the Catholic News Service by

Monsignor Jacques Suaudeau, a medical doctor and official at the Pontifical

Academy for Life.  (*Id*. ¶ 30, citing Ex. C.)  According to Plaintiff, Monsignor

Suaudeau subsequently distanced himself from the statement.  (*Id*. ¶ 31.)

Plaintiff eventually obtained the exemption forms from the nurses, although

she claims that they refused to list her religious convictions on the forms as the

basis for the exemption.  (*Id*. ¶ 55.)  Plaintiff asserts Defendants deprived her of

"her religious and moral responsibility to object . . . on account of her religion,

forcing her to violate her beliefs" by writing as the reason for the waiver: "mom

wants child to have natural immunity."  (*Id*. ¶ 57; Wayne County Defs.' Mot., Ex.

3.)

On December 1, 2015, Plaintiff filed a petition requesting a declaratory

ruling from MDHHS that administrative rule 325.176(12) is invalid and that

MDHHS lacked the authority to promulgate the rule.  (Compl. ¶ 8, Ex. A.)  On

9

February 2, 2016, Director Lyon, as Director of MDHHS, denied Plaintiff's request. (*Id.*, Ex. A.)

## III. Defendants' Arguments

In their motions, Defendants raise several arguments in support of dismissal or summary judgment.

Director Lyon first argues in his motion to dismiss that Plaintiff lacks standing to bring this lawsuit because she in fact obtained her children's exemptions from the State's vaccination requirements. Director Lyon next argues that Plaintiff's claims against him in his official capacity, brought pursuant to 42 U.S.C. § 1983, are barred by Eleventh Amendment immunity. To the extent Plaintiff is suing Director Lyon in his individual capacity, he contends he is entitled to qualified immunity because Plaintiff suffered no violation of her constitutional rights or at least no clearly established right. Director Lyon alternatively maintains that Plaintiff fails to state a claim against him because she does not allege his personal involvement in any wrongdoing, aside from his denial of her administrative grievance, and neither this denial nor respondeat superior liability support the imposition of § 1983 liability.

Separate from his qualified immunity argument, but related, Director Lyon also argues that Plaintiff fails to state a claim against him because her claims fail as a matter of law. Lastly, Director Lyon urges the Court to abstain from deciding

10

Plaintiff's Complaint because she had the opportunity to challenge his order through an appeal to the state court.

In their motion to dismiss, the Wayne County Defendants maintain that Plaintiff cannot establish a municipal liability claim against DHVCW because no municipal policy or custom was the "moving force" behind any alleged constitutional violation. They argue that DHVCW's employees were acting in accordance with Michigan state law rather than any Wayne County policy, practice, or procedure. The Wayne County Defendants alternatively argue that Plaintiff cannot establish the violation of her First Amendment rights based on the facts alleged in her Complaint. Lastly, the Wayne County Defendants contend that Plaintiff alleges no personal involvement between herself and Dr. Hammami or Ms. Austerberry to hold them liable in their individual capacities.

## IV.    Applicable Law and Analysis

The first issue the Court must decide is the order in which to address Defendants' arguments for dismissal. A claim that a plaintiff lacks standing or that a defendant is entitled to Eleventh Amendment immunity speak to the court's power to adjudicate the litigation. The Sixth Circuit has held that "jurisdictional issues" must "be addressed prior to reaching the merits." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Engler*, 304 F.3d 616, 618 (6th Cir. 2002); *see also Rossborough Mfg. Co. v. Trimble*, 301 F.3d 482, 489 (6th Cir. 2002) ("As

11

4:16-cv-12545-LVP-SDD   Doc # 16   Filed 02/23/17   Pg 12 of 25   Pg ID 194

a threshold matter, we must determine whether the Treasurer and the Administrator are entitled to Eleventh Amendment immunity."); *Children's Hosp. Med. Ctr. of Akron v. Youngstown Assocs. in Radiology, Inc.*, 612 F. App'x 836, 836-37 (6th Cir. 2015) (citing *Steel Co. v. Citizens for a Better Env.*, 523 U.S. 83 (1988)) (remanding the action to the district court to decide standing issue, as it must be decided before any questions on the merits).  The Sixth Circuit has held, however, that where a defendant raises sovereign immunity as an alternative ground for dismissal and the merits offer a more straightforward means of resolving a case, "the federal courts have discretion to address the sovereign-immunity defense and the merits in whichever order they prefer."  *Nair v. Oakland Cty. Cmty. Mental Health Auth.*, 443 F.3d 469, 477 (6th Cir. 2006).

While standing always is a threshold issue to address, Director Lyon's standing argument simply overlaps his− as well as the remaining defendants'− merits arguments.  Director Lyon asserts that Plaintiff lacks standing because she has not suffered an injury to any of her constitutional rights.  As Director Lyon argues, Plaintiff's children were not forced to be vaccinated over her objections, they were not denied enrollment in school, Plaintiff received the exemptions she sought, whether her objection was recorded as religious or otherwise made no difference on whether it was honored, and the fact she was offended by or disagreed with the nurses' statements does not state an injury to her constitutional

12

rights.  In other words, Director Lyon merely contends that Plaintiff's averments fail to state a violation of her constitutional rights and, therefore, she did not suffer any cognizable injury to grant her standing to sue.  The Supreme Court has stated, however, that such an argument generally does not raise a challenge to subject-matter jurisdiction.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998).

As the Supreme Court explained in *Steel Company*:

> [J]urisdiction is not defeated by the possibility that the averments might fail to state a cause of action on which [the plaintiff] could actually recover. Rather, the district court has jurisdiction if the right of the [plaintiffs] to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another, … unless the claim clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous.

*Id*. (internal quotation marks, citations, and ellipsis omitted).  The Court explained further: "Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of [the Supreme] Court, or otherwise devoid of merit as not to involve a federal controversy.' "  *Id*. (quoting *Oneida Indian Nation of New York v. Cty. of Oneida*, 414 U.S. 661, 666 (1974)).  While this Court may conclude that Plaintiff fails to state viable constitutional claims, it

13

cannot say that her claims should be dismissed for lack of subject-matter jurisdiction on the grounds of insubstantiality or frivolousness.

Defendants also raise qualified immunity as a defense. However, this defense involves a two-step analysis, with the initial inquiry being whether a constitutional right has been violated if the plaintiff's allegations are established. *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310-11 (6th Cir. 2005) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

For these reasons, and because the Court finds it more straightforward to address the merits of Plaintiff's claims, it will do so first.

### A.    First Amendment Law

The First Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, states in relevant part: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof …." U.S. Const., amend. I; *Everson v. Bd. of Educ.*, 330 U.S. 1, 8 (1947). Through these two clauses, which are "distinct in their objectives and their applicability[,]" "[t]he First Amendment forbids both the abridgment of the free exercise of religion and the enactment of laws 'respecting an establishment of religion.' " *Sch. Dist. of Abington Twp., Penn. v. Schempp*, 374 U.S. 203, 232 (1963) (Brennan, J., concurring) (quoting U.S. Const., amend. I).

14

" 'The Establishment Clause … prohibits government from appearing to take a position on questions of religious beliefs or from making adherence to a religion relevant in any way to a person's standing in the political community.' " *Am. Civil Liberties Union of Ohio Found. v. Ashbrook*, 375 F.3d 484, 490 (6th Cir. 2004) (quoting *Cty. of Allegheny v. Am. Civil Liberties Union*, 492 U.S. 573, 593-94 (1989)) (additional quotation marks and citation omitted).  As the Supreme Court summarized in *Schempp*:

> [T]he [Establishment C]lause withdrew all legislative power respecting religious belief or the expression thereof.  The test may be stated as follows: what are the purpose and the primary effect of the enactment?  If either is the advancement or inhibition of religion then the enactment exceeds the scope of legislative power as circumscribed by the Constitution.  That is to say that to withstand the strictures of the Establishment Clause there must be a secular legislative purpose and a primary effect that neither advances nor inhibits religion.

374 U.S. at 222.  In *Lemon v. Kurtzman*, 403 U.S. 602 (1971), the Court stated the applicable questions as a three part test, for which each factor must be met for a governmental practice to satisfy the Establishment Clause:

> First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion, …; finally, the statute must not foster an excessive entanglement with religion.

*Id*. at 612-13 (internal quotation marks and citations omitted).  "[U]nwelcome direct conduct with the offensive [governmental practice] is enough" to establish

15

standing to assert an Establishment Clause violation. *Washegesic v. Bloomingdale Public Sch.*, 33 F.3d 679, 682 (6th Cir. 1994) (internal quotation marks and citation omitted).

In comparison, the First Amendment's Free Exercise Clause is not violated simply because the government requires a person to be exposed to ideas he or she finds objectionable on religious grounds. *See Mozert v. Hawkins Cty. Bd. of Educ.*, 827 F.2d 1058, 1065 (6th Cir. 1987). "[G]overnment actions that merely offend or cast doubt on religious beliefs do not on that account violate free exercise." *Id*. at 1068. " 'Were the free exercise clause violated whenever governmental activity is offensive to or at variance with sincerely held religious precepts, virtually no governmental program would be constitutionally possible.' " *Id*. at 1068 (quoting *Grove v. Mead Sch. Dist. No. 354*, 753 F.2d 1528, 1542 (9th Cir. 1985)).

Instead, to establish a violation of the Free Exercise Clause, the plaintiff must show an "unconstitutional burden consist[ing] of compulsion either to do an act that violated the plaintiff's religious convictions or communicate an acceptance of a particular idea or affirm a belief." *Id*. at 1066. As the Sixth Circuit concluded in *Mozert*: "It is clear that governmental compulsion either to do or refrain from doing an act forbidden or required by one's religion, or to affirm or disavow a belief forbidden or required by one's religion is the evil prohibited by the Free Exercise Clause." *Id*.

16

The Supreme Court describes the Free Exercise Clause similarly:

> Its purpose is to secure religious liberty in the individual
> by prohibiting any invasions thereof by civil authority.
> Hence it is necessary in a free exercise case for one to
> show the coercive effect of the enactment as it operates
> against him in the practice of his religion.

*Schempp*, 374 U.S. at 223.  "[I]ndirect coercion or penalties on the free exercise of

religion, not just outright prohibitions, are subject to scrutiny under the First

Amendment." *Lyng v. Northwest Indian Cemetery Ass'n*, 485 U.S. 439, 450

(1988).  Nevertheless, the *Lyng* Court went on to state:

> This does not and cannot imply that incidental effects of
> government programs, which may make it more difficult
> to practice certain religions but which have no tendency
> to coerce individuals into acting contrary to their
> religious beliefs, require government to bring forward a
> compelling justification for its otherwise lawful actions.

*Id.* at 450-51, 456 ("The dissent begins by asserting that the 'constitutional

guarantee we interpret today … is directed against *any* form of government action

that frustrates or inhibits religious practice.' … The Constitution, however, says no

such thing.  Rather, it states: 'Congress shall make no law … *prohibiting* the free

exercise [of religion].' ") (emphasis in original). Thus, to establish a violation of

the First Amendment's Free Exercise Clause, the plaintiff must show that the

challenged state action compelled the plaintiff to " 'declare a belief,'

'communicate by word and sign [the plaintiff's] acceptance' of the ideas presented,

17

or make an 'affirmation of a belief and an attitude of mind." *Mozert*, 827 F.2d at 1066.

### B.  First Amendment Analysis

Plaintiff's Free Exercise Clause claim fails because the facts she alleges do not suggest Defendants compelled her either "to do an act or refrain from doing an act forbidden or required by [her] religion, or to affirm or disavow a belief forbidden or required by [her] religion." *Mozert, supra*.  At most what Plaintiff alleges is that she was exposed to "coercion" to violate her beliefs regarding immunization for her children and "filled with lies about her faith from health department employees."  Plaintiff, however, did not yield to the nurses' alleged pressure or lies and agree to immunize her children. She left the health department with the required and completed immunization waiver forms.

As set forth in the preceding section, exposure to information Plaintiff believes wrong, a lie, disagreeable, or objectionable does not establish a violation of her rights under the Free Exercise Clause.  The inconvenience Plaintiff allegedly endured to obtain the immunization waivers (i.e., having to leave work early and drive to the county health department) is a burden placed on all individuals seeking a nonmedical waiver, regardless of whether the basis for their request is their religious or philosophical beliefs or something else (e.g., a fear that vaccinations cause Autism).

18

The Court therefore is dismissing Plaintiff's Free Exercise Clause claim (Count 1) for failure to state a claim on which relief may be granted.

With respect to her Establishment Clause claim, Plaintiff asserts her rights were violated because administrative rule 325.176(12) and Defendants' enforcement of the rule were used to inquire into and challenge Plaintiff's religious beliefs.

The Supreme Court has held that mandatory vaccination is within the State's police power, concluding "we do not perceive that this legislation has invaded *any right* secured by the Federal Constitution." *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11, 25, 38 (1905) (emphasis added). In reaching this conclusion, the *Jacobson* Court rejected the argument that the individual liberty guaranteed by the Constitution overcame the State's judgment that mandatory vaccination was in the interest of the population as a whole. *Id*. at 38. More recently, several federal district and circuit courts have held that state statutes requiring vaccinations as a condition to public school admission do not violate the Free Exercise Clause of the First Amendment. *See, e.g., Phillips v. City of New York*, 775 F.3d 538, 543 (2d Cir. 2015) (declaring "clearly constitutional" New York law precluding school attendance by non-vaccinated children exempted from the state's vaccination requirement for religious reasons during an outbreak of a vaccine-preventable disease); *Workman v. Mingo Cty. Bd. of Educ.*, 419 F. App'x

19

348, 353-54 (4th Cir. 2011) (concluding "that the West Virginia statute requiring vaccinations as a condition of admission to school does not unconstitutionally infringe [the plaintiff's] right to free exercise"); *McCarthy v. Boozman*, 212 F. Supp. 2d 945, 948 (W.D. Ark. 2002) ("The constitutional right to freely practice one's religion does not provide an exemption for parents seeking to avoid compulsory immunization for their school-aged children."); *Sherr v. Northport– East Northport Union Free Sch. Dist.*, 672 F. Supp. 81, 88 (E.D.N.Y. 1987) ("[I]t has been settled law for many years that claims of religious freedom must give way in the face of the compelling interest of society in fighting the spread of contagious diseases through mandatory inoculation programs."). Michigan, therefore, could constitutionally mandate that *all* children receive the required immunizations before attending public school.

Michigan law goes beyond what is constitutionally required by allowing an exemption for medical reasons or "because of religious convictions or other objection to immunization." Mich. Comp. Laws § 333.9215. Michigan's interest in protecting its school-age children and its citizens from communicable diseases clearly gives it the right to require individuals seeking an exemption to receive educational information concerning immunizations to confirm that the individual is making a well-informed decision. Knowing the reason(s) for the individual's

20

objection is necessary to identify the relevant educational information the county health department employee needs to cover.

Administrative rule 325.176(12) imposes this educational requirement for *all* nonmedical exemptions (i.e., those based on religious or philosophical beliefs or some other reason). Thus, it reflects a secular purpose. Plaintiff nevertheless contends that the rule and the manner in which it was enforced in her case inhibit religion. Specifically, Plaintiff alleges in her Complaint that the rule "allows State employees to withhold public schooling unless parents submit to a religious inquisition on the substance and logic of their beliefs, and endure false and misleading State-sponsored religious instruction about their beliefs." (Compl. ¶ 1.) As evidence of this "religious instruction", Plaintiff points to one document MDHHS prepared to respond to concerns or objections related to religion.[1] (*Id*., Ex. B.)

---

[1] Plaintiff also alleges that Defendants "require[ed] her to mask her religious beliefs in the shroud of an 'other' objection[]" (Compl. ¶ 55) and interfered with her "grave responsibility … to make a conscientious objection with regard to those vaccines which have moral problems." (*Id*. ¶ 56, internal quotation marks and emphasis removed.) Michigan law provides Plaintiff the ability to obtain a religious waiver for its immunization requirement. Plaintiff does not have a constitutional right to have the reason for her waiver stated on the Immunization Waiver Form, however. Moreover, Defendants did not inhibit Plaintiff's practice of her religion by not writing "religious objection" or something similar as the reason for the waiver. Plaintiff was free to state her objection to vaccines, and in fact did so.

Neither the rule nor Defendants' alleged conduct convey disfavor of a certain religion or religions. Nor do they express disfavor of all religions. More importantly, their primary effect is neither the advancement nor inhibition of religion. When reviewed comprehensively and in context, MDHSS' materials addressing religious objections to vaccination do not disapprove of a particular religion or religion in general. Instead, the materials simply provide county health department staff with educational information to share with individuals seeking an exemption. The fact that Plaintiff does not agree with statements in the materials or believes any statement is wrong does not render their use a violation of the Establishment Clause. Notably, while Plaintiff only attaches to her Complaint the materials MDHHS prepared to respond to religious objections to vaccination, a review of MDHHS' website reflects that it has created several documents titled "Waiver Education" to address other reasons individuals object to immunizations.[2]

---

[2] Without converting a Rule 12(b)(6) motion to dismiss to a motion for summary judgment under Rule 56, a court can take judicial notice of " '[p]ublic records and government documents available from reliable sources on the internet,' such as websites run by governmental agencies." *U.S. ex. rel. Modglin v. DJO Global, Inc.*, 48 F. Supp. 3d 1362, 1381 (C.D. Cal. 2014) (quoting *Hansen Beverage Co. v. Innovation Ventures, LLC*, No. 08-cv-1166, 2009 WL 6597891, at *1 (S.D. Cal. Dec. 23, 2009)); *see also In re Wellburtin SR/Zyban Antitrust Litig.*, 281 F. Supp. 2d 751, 754 n.2 (E.D. Pa. 2003) (citing cases) ("The fact that an agency report is 'published' on the internet does not affect the Court's ability to take judicial notice of the contents of that report," and the Court may consider the information as a matter of public record without converting a motion to dismiss to one for summary judgment.); *see also* Fed. R. Evid. 201.

*See* http://www.michigan.gov/mdhhs/0,5885,7-339-
73971_4911_4914_68361_78052---,00.html.

For these reasons, the Court holds that Plaintiff's Establishment Clause

claim (Count 2) fails as a matter of law.

### C. Plaintiff's State Law Claims

This Court has supplemental jurisdiction over Plaintiff's state law claims

pursuant to 28 U.S.C. § 1367.  Section 1367 provides that "[t]he district courts may

decline to exercise supplemental jurisdiction over a claim … if … the district court

has dismissed all claims over which it has original jurisdiction."  28 U.S.C.

§ 1367(c)(3).  District courts have "broad discretion in deciding whether to

exercise supplemental jurisdiction over state law claims."  *Musson Theatrical, Inc.*

*v. Fed. Express Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996).  The court's discretion,

however, is circumscribed by considerations of " 'judicial economy, convenience,

fairness, and comity.' "  *Id.* (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S.

343, 350 (1988)).  "After a [Rule] 12(b)(6) dismissal, there is a strong presumption

in favor of dismissing supplemental claims."  *Id.* at 1255 (citations omitted)

("When all federal claims are dismissed before trial, the balance of considerations

usually will point to dismissing state law claims, or remanding them to state court

if the action was removed.").

23

Plaintiff's Complaint has been pending in this Court for a little more than six months and is at the earliest stages of litigation.  Defendants responded to Plaintiff's Complaint with their motions to dismiss and, besides those motions, no other substantive documents have been filed.  Nor have any conferences or hearings been held.  Moreover, analyzing the state law issues raised in Plaintiff's Complaint would not be a wise application of federal judicial resources.  The Michigan courts should resolve Plaintiff's claims that Defendants' actions violate the state's constitution and that administrative rule 325.176(12) violates Michigan Compiled Laws § 333.9215.  This Court cannot identify any prejudice resulting from the litigation of those issues in state court.

For these reasons, the Court is declining to exercise supplemental jurisdiction over Plaintiff's state law claims upon its dismissal of her federal constitutional claims.

## V.      Conclusion

For the reasons set forth above, the Court concludes that Plaintiff's First Amendment claims (Counts 1 and 2) fail to state a claim upon which relief may be granted.  The Court is dismissing those claims with prejudice pursuant to Rule 12(b)(6).  The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims (Counts 3 and 4).  The Court, therefore, is dismissing those claims without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

24

Accordingly,

**IT IS ORDERED** that Defendants' motions to dismiss (ECF Nos. 10, 11)

are **GRANTED IN PART AND DENIED IN PART**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: February 23, 2017

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, February 23, 2017, by electronic and/or U.S. First Class mail.

s/ Richard Loury
Case Manager

25